IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KENNETH H. G.,

                        Plaintiff,

            v.                                      Civil Action No.
                                                    5:20-CV-1395 (GLS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINISKY LAW GROUP                    ALEXANDER C. HOBAICA, ESQ.
250 South Clinton Street, Suite 210   HOWARD OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                NATASHA OELTJEN, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the

relevant times and, accordingly, is ineligible for the disability insurance

("DIB") and supplemental security income ("SSI") benefits for which he has

applied.  This matter, which is before me for the second time, has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

For the reasons set forth below, I recommend that this matter be remanded

to the Commissioner for further proceedings.

I.      BACKGROUND

        Plaintiff was born in April of 1976, and is currently forty-five years of

age.  He was thirty-eight years old at his alleged onset date of disability of

June 6, 2014, and at the time of his application for benefits in the same

month.  Plaintiff stands between five feet and ten inches and six feet in

height, and weighed between approximately one hundred and fifty and one

hundred and sixty pounds.  At various times throughout the relevant period,

plaintiff lived with his sister, with a former partner, and by himself.  In terms

of education, plaintiff reported completing the ninth grade with participation

in special education classes while he was in school.  Plaintiff reported

previously working as a herdsman on a dairy farm, a snowmaker at a ski

resort, a roofer/framer for home construction, and a tractor operator on a

farm.

Plaintiff alleges that he suffers from a bipolar disorder, posttraumatic stress disorder ("PTSD"), and a seizure disorder.  He has been treated for these impairments throughout the relevant time period with medications and counseling.  Specifically, plaintiff received treatment for his mental impairments primarily through Family Counseling Services of Cortland County, and for his seizure disorder from Family Health Network of Central New York, Cortland Regional Medical Center, Cayuga Medical Center, and Dr. Jody Stackman at Cayuga Neurologic Services.

Plaintiff alleges that he experiences seizures in the form of episodes where he loses consciousness, stares into space, shakes, and sometimes becomes incontinent.  These seizures occur both while he is asleep and when he is awake, and they occur on average once or twice per week, although the frequency is variable.  They last approximately ten minutes and it takes an additional fifteen to thirty minutes after the episode ends for him to return to normal.  After an episode, plaintiff is weak and lightheaded and usually lies down due to being tired.  He also experiences a tremor in his limbs all the time that makes it difficult for him to hold things.  Plaintiff is unable to drive because of his seizures.

In addition to his seizures, plaintiff has mental health issues that

make him irritable with people and cause nightmares and flashbacks that affect his ability to sleep.  In terms of daily activities, plaintiff can cook and wash in his home, watch television, spend time with family, go to his hunting camp ten miles from his home, and spend time walking his support dog.  He does not shop anymore because of the stress associated with coming into contact with other people.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

        Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act, respectively, on June 17, 2014.  In support of those applications, he alleged a disability onset date of June 6, 2014, and claimed to be disabled based on seizures, anxiety, a sleep disorder, a bipolar disorder, and depression.

        A hearing was conducted on August 9, 2016, by Administrative Law Judge ("ALJ") Michael Carr, to address plaintiff's applications.  Following that hearing, ALJ Carr issued an unfavorable decision on December 14, 2016.  That opinion became a final determination of the agency on February 5, 2018, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

        Plaintiff challenged the Commissioner's decision in a proceeding

commenced in this Court.  On August 28, 2019, I remanded the action for

further proceedings, including specifically for the ALJ to assess whether

plaintiff's seizure disorder constitutes a presumptively disabling condition.

The Appeals Council thereafter remanded the matter in accordance with

my order, on October 29, 2019.

On August 7, 2020, ALJ Kenneth Theurer conducted a supplemental

hearing.  Following that hearing, ALJ Theurer issued another unfavorable

decision on September 10, 2020.  Plaintiff bypassed the written exceptions

procedure in accordance with 20 C.F.R. § 404.984, and has appealed

again directly to this court.

      B.    <u>The ALJ's Decision</u>

In his decision, ALJ Theurer applied the familiar, five-step sequential

test for determining disability.  At step one, he found that, although plaintiff

had engaged in substantial gainful activity for a small portion of the relevant

period, there was a sufficient period of time in which he had not engaged in

substantial gainful activity for his claim to proceed.  At step two, ALJ

Theurer found that plaintiff suffers from severe impairments that impose

more than minimal limitations on his ability to perform basic work functions,

including PTSD and depression.

At step three, ALJ Theurer examined the governing regulations of the

Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of those listed

conditions, specifically considering Listings 11.02, 12.04, and 12.15.

ALJ Theurer next surveyed the available record evidence and

concluded that plaintiff retains the residual functional capacity ("RFC") to

perform a range of medium work,[1] as defined by the controlling regulations,

with the following exceptions:

> [the claimant can] lift and carry up to 50 pounds
> occasionally, lift or carry up to 25 pounds frequently
> and stand or walk for approximately 6 hours and sit
> for up to 6 hours, in an 8 hour workday with normal
> breaks, he can never climb ladders, ropes or
> scaffolds, and can only occasionally crawl. The
> claimant can frequently climb ramps or stairs,
> balance, stoop, kneel and crouch. He can perform no
> more than frequent overhead reaching but has no
> limitations in other directions. Work is limited to
> simple, routine, and repetitive tasks in a work
> environment free of fast paced production
> requirements; involving only simple, work-related
> decisions; with few, if any, work place changes. The

---

[1]    By regulation, medium work is defined as follows:

> Medium work involves lifting no more than 50 pounds at a time
> with frequent lifting or carrying of objects weighing up to 25
> pounds. If someone can do medium work, we determine that
> he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(c), 416.967(c).

claimant can have no more than occasional contact
with coworkers, supervisors and the public.

At step four, ALJ Theurer concluded that plaintiff is unable to perform

the demands of any of his past relevant work, based on his RFC finding.

Proceeding to step five, the ALJ consulted a vocational expert and found

that, pursuant to the vocational expert's testimony, plaintiff remains capable

of performing available work in the national economy, citing representative

occupations such as night cleaner, store laborer, and laundry laborer.

Based upon these findings, ALJ Theurer concluded that plaintiff was not

disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on November 11, 2020.[2]  In support

of his challenge to the ALJ's determination, plaintiff contends that the RFC

determination is not supported by substantial evidence based on the ALJ's

failure to evaluate and consider the relevant legally prescribed factors for

assessing opinion evidence under the applicable regulations when rejecting

the opinion from treating neurologist Dr. Jody Stackman.

---

[2]     This action is timely, and the Commissioner does not argue otherwise.  It has
been treated in accordance with the procedures set forth in General Order No. 18.
Under that General Order, the court treats the action procedurally as if cross-motions for
judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure. It should be noted that this case is somewhat unusual, in that both
parties have moved for remand, albeit different forms of remand.

Oral argument was conducted in this matter, by telephone, on February 1, 2022, at which time decision was reserved.

III.   DISCUSSION

    A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.

1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the

second step involves an examination of whether the claimant has a severe

impairment or combination of impairments that significantly restricts her

physical or mental ability to perform basic work activities.  *Id.* §§

404.1520(c), 416.920(c).  If the claimant is found to suffer from such an

impairment, the agency must next determine whether it meets or equals an

impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d),

416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant

is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149

(N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.

1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, the agency must

examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Plaintiff's sole argument in this case is that the ALJ's determination is

not consistent with the applicable legal standards or supported by

substantial evidence because he failed to properly consider the factors

outlined in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), and the

regulations governing his claim when analyzing the opinion from treating

neurologist Dr. Stackman.[3]  I find that there is no need to consider whether

plaintiff's technical argument regarding Dr. Stackman's opinion is

persuasive, given that clear error exists on other grounds that render

meaningful review of the ALJ's assessment of Dr. Stackman's opinion and

the RFC impossible.

    In his decision, the ALJ found that plaintiff did not have a medically

determinable impairment related to the seizure-like episodes that are

documented throughout the objective medical record.  Administrative

Transcript ("AT") at 664.[4]  In making this finding, the ALJ relied upon non-

examining medical expert Dr. Oliver Gerald Orth, who concluded that

"although the claimant may have an occasional alcohol withdrawal

seizure[s], there were no findings on MRI or EEG to support a diagnosis of

epilepsy."  AT 665.  In assessing the RFC at a later step in the sequential

---

[3]    Because plaintiff's application for benefits were filed prior to March 27, 2017, evaluation of Dr. Stackman's opinion is governed by the since-amended regulations, specifically 20 C.F.R. §§ 404.1527, 416.927.

[4]    The Administrative Transcript is found at Dkt. No. 13 and will be cited as "AT __."

evaluation, ALJ Theurer acknowledged plaintiff's reports of seizure activity in the form of episodes of staring, shaking in his right-side limbs, and tremors, but appeared to generally imply that those episodes are caused by alcohol use or alcohol withdrawal, a conclusion that he attributes to Dr. Orth.  AT 668, 671, 673.  The ALJ discussed the results of an EEG from July 2017 that documented multiple "events" but ultimately showed that plaintiff did not have epilepsy, and also discussed an April 2019 treatment note in which it was noted that plaintiff was having psychogenic nonepileptic seizures ("PNES") and that antiepileptic medications would not be prescribed due to the lack of evidence of epilepsy.  AT 672.  The ALJ relied heavily on the opinion of Dr. Orth when formulating the RFC determination, but explicitly declined to adopt the opined seizure limitations, reasoning that "claimant's seizures are only related to alcohol abuse and the claimant is sober."  AT 673.  The ALJ also rejected the opinion from treating neurologist Dr. Stackman that plaintiff would be off-task twenty percent of the workday due to his seizure disorder based on his finding that "epilepsy is not a medically determinable impairment and as such, this limitation is unsupported by the record," as well as because it was "speculative at best and not explained or tied to any objective evidence or clinical findings."  AT 673.

A review of the entirety of the ALJ's decision makes it abundantly clear that he failed to appropriately consider plaintiff's seizure-like episodes when assessing plaintiff's work-related limitations and calls into question whether the ALJ either failed to adequately consider evidence in the record related to those episodes or simply ignored such evidence, both of which would be grounds for remand. In particular, the ALJ's decision lacks an assessment of the objective medical evidence from which it can be meaningfully ascertained that he had a correct understanding of the nature and functional effects of plaintiff's seizure disorder. *See Carl D. v. Comm'r of Soc. Sec.*, 18-CV-1106, 2019 WL 5537627, at *6-8 (N.D.N.Y. Oct. 25, 2019) (Stewart, M.J.) (finding remand warranted where the ALJ's discussion of the plaintiff's neck impairment "lacked a careful analysis" and left the court uncertain whether the ALJ had considered the entirety of the evidence related to that impairment).

The medical treatment evidence from plaintiff's alleged onset date in 2014 through mid-2017 documents that plaintiff consistently reported seizure-like episodes of varying frequency about which his physicians made various assessments of the possible etiology. On some occasions, he was observed to have mild tremors on examination. AT 397, 545, 548, 554, 557. On August 2, 2016, his therapist, Nurse Practitioner Melanie

Novick, observed that plaintiff appeared to have a seizure while in the office, during which time he became unresponsive and displayed a fixed gaze with a right arm tremor, an episode which lasted three minutes.  AT 643.

On July 14, 2017, plaintiff began long-term EEG monitoring related to his seizures.  AT 943-44.  Over the course of the five days of monitoring, plaintiff was observed to experience eight events involving tremors/shaking, reports of limb numbness and weakness, and unresponsiveness.  *Id.*  EEG testing did not record any epileptiform activity during these events.  *Id.*  The physician who oversaw the testing, Dr. Deana Bonno, concluded that plaintiff's episodes were non-epileptic in nature and the evidence did not support a diagnosis of epilepsy.  AT 944.  Dr. Bonno instead assessed plaintiff with a diagnosis of "psychogenic nonepileptic attacks" ("PNES") and informed plaintiff of the unconscious nature of the attacks, which she emphasized "are real" and that a person experiencing them "does not have overt control over the attacks as they arise in the subconscious mind."  AT 957-58.  She noted that "these episodes are coming from the mind rather than the brain," and "[e]mphasized that these types of attacks are common, he is not faking them, and they are not treated with antiseizure medication but rather with counseling."  AT 947.  Dr. Bonno additionally discussed with

plaintiff that "psychogenic attacks, though not epilepsy, can still be disabling and impair function, and until they are under better control, he cannot be released to drive any motor vehicles and should not do anything dangerous where he might be hurt if he were to have a spell."  AT 961-62.

Following the EEG testing, other treating or examining sources accepted the diagnosis that plaintiff's episodes were PNES and provided treatment and recommendations accordingly.  *See e.g.*, AT 1071-74, 1113, 1404-05. In October 2018, neurologist Dr. Gaffney, who took over care of plaintiff after Dr. Stackman retired, advised plaintiff that he still could not drive or perform other activities that would put him at risk if he were to have an episode, because plaintiff was still experiencing PNES episodes of varying frequency.  AT 1404.  In late 2018 and early 2019, plaintiff reported that smoking marijuana daily was helping to stop his episodes and he was therefore looking into getting approved for medical marijuana.  AT 1084, 1090.  Plaintiff reported in April 2019 that he was still having episodes one or two times per week, each of which lasted five-to-ten minutes.  AT 1407. In July 2019, however, he reported that he had not had any recent episodes.  AT 1102.

The evidence recounted above, and particularly the EEG testing performed by Dr. Bonno in July 2017, establishes not only that plaintiff

does not have epilepsy – as the ALJ acknowledged – but also that

plaintiff's episodes are psychogenic in nature.  And yet, despite this

evidence, the ALJ found that plaintiff's seizure episodes were "only related

to alcohol abuse."  AT 673.  In coming to this conclusion, the ALJ appears

to rely on the opinion of Dr. Orth, who did not include PNES or any other

diagnosis related to plaintiff's episodes in the list of impairments he

considered, and who made a notation that plaintiff "may on occasion have

alcohol withdrawal seizure[s]."  AT 1438.  The ALJ therefore not only failed

to give any indication that he appropriately considered the relevant

evidence related to PNES, but also failed to reconcile Dr. Orth's conclusory

finding that his episodes were alcohol-related – a conclusion that the ALJ

ultimately adopted – with the contrary objective medical evidence in the

record.  Dr. Orth's interrogatory responses certainly provide no indication

as to what evidence he was basing his conclusion on.  The ALJ has the

"sole responsibility to weigh all medical evidence and resolve material

conflicts," and, in doing so, he or she is required to "explain how the

evidence conflicts and how they resolve[d] the conflict."  *Gough v. Saul*,

799 F. App'x 12 (2d Cir. 2020); *Lianna M. D. v. Kijakazi*, 20-CV-0615, 2021

WL 4150102, at *7 (N.D.N.Y.. Sept. 13, 2021) (Kahn, J.).  Here the ALJ has

not even made clear that he recognized a conflict, much less explained

17

why he found Dr. Orth's statement regarding plaintiff's seizures being related to alcohol more persuasive than the other evidence showing that plaintiff was diagnosed with PNES. There is very little that can be seen on review that would indicate that the ALJ's weighing of the evidence on this matter is supported by substantial evidence, as it is fairly clear in the medical record that plaintiff's seizures were psychogenic and not merely related to alcohol use.

I note, moreover, that Dr. Orth opined that plaintiff requires limitations for only frequent exposure to moving mechanical parts, operating a motor vehicle, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations, as well as only occasional exposure to unprotected heights. AT 1432. As was already discussed, the ALJ rejected these limitations solely on the basis that they were not warranted based upon his finding that plaintiff's seizure episodes were caused by alcohol withdrawal and he was sober for much of the relevant time. The ALJ's failure to appropriately consider the psychogenic nature of plaintiff's episodes therefore renders his rejection of seizure precautions unsupported by substantial evidence. As was discussed above, multiple physicians who accepted the psychogenic nature of his episodes explicitly noted that it could be dangerous for plaintiff engage in certain activities that

could result in harm if he were to have an episode while engaged in the activity.

The ALJ's failure to appropriately and fully consider the true nature of plaintiff's seizure activity also calls into question his rejection of Dr. Stackman's opinion. Indeed, part of the reason for rejecting that opinion was the fact that it was based on a diagnosis of epilepsy, and plaintiff was shown not to have epilepsy. However, the fact that plaintiff does not have epilepsy does not mean he does not have a legitimate, discernable disorder that causes seizure-like episodes that could result in him being off-task or having other limitations. Based on the ALJ's clear failure to consider plaintiff's PNES, the ALJ's conclusion that Dr. Stackman's opinion is not supported by or consistent with the evidence in this case cannot be accepted as being supported by substantial evidence. Whether the evidence does support the level of limitation opined by Dr. Stackman is not for this court to decide, but rather should be assessed by an ALJ in the first instance after appropriately considering all of the evidence before him or her in a reasoned manner.

The ALJ's conclusion that plaintiff's seizure activity was not substantiated or of no consequence simply because he did not have a specific diagnosis of epilepsy not only is a gross misunderstanding of the

medical issues in this case, but is also contradicted by the objective medical evidence of record, as was already discussed.  The clear and unexplained contradiction between the ALJ's conclusions and the evidence in the record renders certain of those conclusions unsupported by substantial evidence and prevents meaningful review of his overall conclusions regarding the RFC and disability.

Although it could be argued that the ALJ implicitly considered plaintiff's PNES, which is essentially rooted in a mental disorder, as part of his discussion of plaintiff's other mental impairments and his explanation that he considered plaintiff's mental functioning without recounting every specific characterization of plaintiff's mental diagnoses, I find that such a vague explanation is too superficial to cover the scope of the error here. This is evidenced by the fact that the ALJ explicitly rejected any opinion regarding the existence of limitations that are generally used as seizure precautions, such as avoidance of work involving heights, hazardous machinery, and driving, due to the fact that plaintiff did not have epilepsy, and by the ALJ's dubious conclusion that plaintiff's episodes were related to alcohol withdrawal rather than a mental impairment.  AT 673. Accordingly, even if the ALJ intended to consider PNES as part of his assessment of mental impairments broadly, he failed to reconcile the

evidence in the record related to that impairment with his finding that seizure-type precautions were not warranted, and his explanation for rejecting such limitations suggests he did not consider the nature of the PNES episodes to any real or meaningful extent in making that finding.

It is true that plaintiff did not make any argument regarding the specific errors discussed here in support of his challenge to the Commissioner's determination.  That fact, however, should not prevent remand.  *See Stacy D. v. Comm'r of Soc. Sec.*, 19-CV-0228, 2021 WL 1975399, at *4 (W.D.N.Y. May 18, 2021) (*sua sponte* finding that the ALJ's assessment of plaintiff's mental impairment was not supported by substantial evidence); *Angueira v. Berryhill*, 17-CV-6099, 2019 WL 1230768, at *3 n.3 (E.D.N.Y. Mar. 15, 2019) (noting that it was remanding based on issues neither of the parties had raised); *Franklin v. Colvin*, 16-CV-6478, 2018 WL 1449524, at *6 (S.D.N.Y. Mar. 23, 2018) (finding it appropriate to *sua sponte* assess whether the ALJ appropriately applied the special technique for assessing the severity of mental impairments). Given the clear nature of the error and the potential impact it could have on plaintiff's claim, to ignore the error present in the ALJ's decision merely because plaintiff's counsel did not squarely raise it would be inconsistent with the principles of justice that this court is bound to uphold.

Based on the foregoing, I recommend that this matter be remanded for further proceedings, including a full and complete assessment of the functional impact of plaintiff's PNES episodes as evidenced by the record.

IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 18) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 21) be DENIED, and this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this this Order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:      February 7, 2022
            Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge